[Cite as *State v. Wilson*, 2019-Ohio-150.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106862

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ANTWAN D. WILSON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-615346-A

**BEFORE:** E.T. Gallagher, J., Kilbane, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** January 17, 2019

**ATTORNEY FOR APPELLANT**

John F. Corrigan
19885 Detroit Road, #335
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:     Matthew E. Meyer
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Antwan D. Wilson, appeals his sentence and claims the following sole assignment of error:

> Appellant's sentence was excessive because the sentence was contrary to law and the record fails to support the court's statutory findings.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

### I.  Facts and Procedural History

{¶3} Wilson was charged with one count of theft, one count of retaliation, three counts of intimidation, one count of extortion, and one count using a sham legal process.  The charges resulted from a series of events that began when a Garfield Heights police officer arrested Wilson for driving under suspension. Wilson had difficulty regaining possession of his car after his arrest and sent a letter to Donna Marcoguiseppe, the clerk of courts for Garfield Heights Municipal Court, demanding payment of $10,000,000.00 for an unpaid bill.  The letter notified Marcoguiseppe that a lien could be placed on her home if she failed to remit full payment of the

debt in a check or money order payable to King Antwan D. Wilson-Ali Bey. In place of a signature, the letter provided the following designation: "Moorish American Automated Collection System — A Private Birthright Defender Group." Thereafter, Wilson filed a UCC-1 filing statement, which functioned as a lien and listed Marcoguiseppe's home as collateral. Wilson was indicted shortly thereafter.

{¶4} Pursuant to a plea agreement, Wilson pleaded guilty to one count of using a sham legal process, a third-degree felony, in violation of R.C. 2921.52(B)(4). The remaining charges were nolled. At the sentencing hearing, Wilson's trial counsel told the court that Wilson believed he was a citizen of a sovereign nation known as the Indigenous Moors. Counsel explained that Wilson had acknowledged to him that what he did was wrong and he was sorry for his actions. Defense counsel also observed that Wilson's conduct was not violent, and Marcoguiseppe did not suffer any financial harm as a result of the lien.

{¶5} Wilson, who spoke on his own behalf, told the court he did not intentionally harm Marcoguiseppe. The court, however, repudiated Wilson's comments, stating:

> Well, I'm confused by your statements here when you've been filing things saying that people owe you like $1,000 a minute * * *. That to me is something that is intended to intimidate others and force them to act in a certain way.
>
> I mean, you have filed many, many documents. * * * Not all of them make sense to me, but I do see the part where you demand that people pay you money * * * for enforcing [the] laws of Ohio and the federal government. So I don't agree with you * * * that you weren't trying to hurt someone.

(Tr. 49.) After hearing a victim impact statement delivered by Judge Deborah Nicastro of the Garfield Heights Municipal Court on Marcoguiseppe's behalf, the court sentenced Wilson to 30 months in prison. The trial court declined to impose the maximum 36-month prison term

because Wilson cooperated with the state in testifying against another member of the Moors in a separate case. (Tr. 54.)   Wilson now appeals his sentence.

## II.   Law and Analysis

{¶6} In the sole assignment of error, Wilson argues his sentence should be vacated because it is contrary to law and not supported by the record.

{¶7} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.   R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate and remand a felony sentence if the court clearly and convincingly finds either that the record does not support the sentencing court's findings or the sentence is otherwise "contrary to law."

{¶8} A sentence is not contrary to law if the trial court considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12, properly applied postrelease control, and imposed a sentence within the applicable statutory range.   *State v. Lenard*, 8th Dist. Cuyahoga No. 105998, 2018-Ohio-3365, ¶ 79, citing *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10.

{¶9} The appellate version of R.C. 2929.11[1] in effect at the time of sentencing provided that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others to punish the offender using the minimum sanctions that the court determines accomplish those purposes" and required that the sentence be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim."   R.C.

---

[1]   R.C. 2929.11, as amended by S.B. 66, effective October 29, 2018, now provides three overriding purposes of felony sentencing (1) to protect the public from future crime by the offender and others, (2) to punish the offender, and (3) to promote the effective rehabilitation of the offender "using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources."

2929.11(A) and (B). The trial court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(A).

{¶10} R.C. 2929.12 provides a nonexhaustive list of factors that the court must consider in relation to the seriousness of the underlying crime and likelihood of recidivism, including "(1) the physical, psychological, and economic harm suffered by the victim, (2) the defendant's prior criminal record, (3) whether the defendant shows any remorse, and (4) any other relevant factors." *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 26, citing R.C. 2929.12(B) and (D).

{¶11} Although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the court is not required to make findings or give reasons for imposing more than the minimum sentence. *State v. Pavlina*, 8th Dist. Cuyahoga No. 99207, 2013-Ohio-3620, ¶ 15, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. A trial court's general statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes. *Id.*, citing *State v. Wright*, 8th Dist. Cuyahoga No. 95096, 2011-Ohio-733, ¶ 4. And because courts have full discretion to impose sentences within the statutory range, a sentence imposed within the statutory range is "presumptively valid" if the court considered the applicable sentencing factors. *Id.*, citing *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

{¶12} The trial judge expressly stated on the record that he considered the entire case file and the presentence investigation report. The court also recited the purposes and principles of

felony sentencing in open court and on the record. (Tr. 51-52.)   With respect to the seriousness

and recidivism factors set forth in R.C. 2929.12, the court elaborated:

> So here's what I find significant under 2929.12(B) [which] indicates your conduct is more serious: This was organized.   You had within your apartment a number of documents and other things to bring false claims against a property and persons of others.

> And you may have counseled others.   That's not part of our case. But certainly filing documents with the State and demanding money and trying to intimidate others is an organized process.

> Indicators that you're more likely to reoffend under 2929.12(D): This occurred while you were on community control sanctions * * * .   You seem to be doing well in that case.    But in the background, you're committing this crime.

> You also have prior convictions.   There's a range of them.   Some are theft offenses.    Some are offenses of not complying with laws such as escape or notice of failing to file the change of address.   Some are drug cases.   You have [a] terroristic threats case.    You have a sex offense.    So you have a range of activity that I would say is antisocial.

(Tr. 52-53.)    After acknowledging that Wilson apologized to the victim and obtained a GED, the

court continued:

> But what I note most significantly here, you are willing to accept portions of government programs such as subsidized housing and all that, but not others which involve responsibility.   And responsibility includes not threatening others by using a fake legal process.

> To me, this is a type of domestic terrorism.   The attempt was to undermine our legal process.   It was not a misunderstanding.   That was calculated to put pressure on someone who was doing their lawful job, and that is unacceptable.

(Tr. 53-54.)    Thus, the trial court demonstrated that it considered the need to protect the public

and punish the offender as required by R.C. 2929.11.   The record also shows that the trial court

considered the seriousness factors set forth in R.C. 2929.12(B) and (C) as well as the recidivism

of factors set forth in R.C. 2929.12(D) and (E).   In its sentencing journal entry, the trial court

further indicated that it had "considered all required factors of the law." Therefore, the court complied with the requirements of R.C. 2929.11 and 2929.12.

{¶13} The trial court also imposed a sentence within the applicable statutory range. Wilson was convicted of using a sham legal process in violation of R.C. 2921.52(B)(4), a third-degree felony. R.C. 2929.14(A)(3)(b), which governs basic prison terms, provides that the prison term for a third-degree felony in violation of R.C. 2921.52(B)(4) "shall be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months." Since the trial court sentenced Wilson to a 30-month prison term, his sentence is within the statutory range. Therefore, Wilson's sentence is not contrary to law.

{¶14} Wilson nevertheless argues the trial court's findings are not supported by the record. He contends the trial court erroneously concluded that he acted with malice and engaged in a form of domestic terrorism. Wilson also argues he never intended to harm Marcoguiseppe and that no intimidation occurred because Marcoguiseppe was familiar with the Moors and the absurdity of their filings.

{¶15} However, the practice of filing frivolous documents, liens, and fraudulent financing statements, particularly by organized groups such as the Moors, has been recognized as a form of "paper terrorism."[2] The filing of liens for purposes of intimidation, harassment, and retaliation is well documented. In a law review article on the subject, the author described the harm caused by the filing of fraudulent liens:

---

[2] *See, e.g.*, *Casamento v. Berendt*, Ill.App. No. 2-18-0086, 2018 Ill. App. LEXIS 180086 (Sept. 18, 2018); *Hill-Bey v. Johnson*, S.D.Ind. No. 1:16-cv-00487-TWP-MJD, 2017 U.S. Dist. LEXIS 92653 (June 15, 2017) ( A typical activity of Sovereign Citizens is filing false lien notices, a tactic known as "paper terrorism."); *Bey v. United States*, C.D.Ill. No. 1:16-cv-01403-JBM, 2016 U.S. Dist. LEXIS 147125 (Oct. 25, 2016), fn. 4 ("Paper terrorism" is the filing of false liens and frivolous claims against public officials.); *State v. Eilertson*, Minn.App. No. A-14-1675, 2015 Minn. App. LEXIS 16 (Jan. 5, 2015); Erica Goode, *In Paper War, Floor of Liens Is the Weapon*, N.Y. Times Aug. 23, 2013) A1.

> Although the perpetrators of this form of harassment do not often try to collect on the liens, their very existence is trouble enough. The liens can create serious financial hardships for victims. Credit ratings are often severely damaged, and the time and expense needed to clear up the liens can be tremendous. Clearing a victim's name and credit can take months or even years, and sometimes thousands of dollars in legal expenses.

Weir, *Note & Comment: Sovereign Citizens: A Reasoned Response to the Madness*, 19 Lewis & Clark L.Rev. 829, 857 (2015).

{¶16} Marcoguiseppe was able to remove the lien on her home in a relatively short period of time without incurring any significant economic loss. Nevertheless, we agree with the trial court that Wilson was not mistaken about the effect of the lien on Marcoguiseppe's property. Wilson was frustrated with the process required to repossess his car, and he retaliated against Marcoguiseppe by making demands and filing the lien. Wilson demonstrated a level of sophistication and organization that threatened other public officials with retaliation for simply doing their jobs. Wilson filed the lien knowing that the lien would, at the very least, cause aggravation for the victim, but could also cause substantial financial harm. Thus, Wilson's claim that he was mistaken about the effect of the lien and that he did not intend to hurt anyone demonstrates a lack of remorse and a failure of Wilson to take responsibility for his actions. Furthermore, Wilson's extensive criminal record also reveals that Wilson is likely to reoffend. Therefore, the trial court's findings are supported by the record.

{¶17} The sole assignment of error is overruled.

{¶18} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR